UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

JOHN DORN,

      Plaintiff,                        NO. 1:15-cv-359

v.                                HON. PAUL L. MALONEY

MICHIGAN DEPARTMENT OF
CORRECTIONS, HARESH PANDYA,
JEFFREY STIEVE, THOMAS FINCO,
DANIEL HEYNS, BILL SCHUETTE,

      Defendants.

_____

Chris Emerson Davis (P52159)
Michigan Protection & Advocacy Service
Inc. (Lansing)
4095 Legacy Pkwy., Ste. 500
Lansing, MI 48911
(517) 487-1755
Fax: (517) 487-0827
Email: cdavis@mpas.org

Clifton B. Schneider (P70582)
Attorney for MDOC, Pandya, Finco,
Heyns, and Schuette
Michigan Dep't of Attorney General
Corrections Division
P.O. Box 30217
Lansing, MI  48909
(517) 335-7021
Email: schneiderc1@michigan.gov

_____/

**BRIEF IN SUPPORT OF DEFENDANTS MICHIGAN DEPARTMENT OF
CORRECTIONS, HARESH PANDYA, THOMAS FINCO, DANIEL HEYNS,
AND ATTORNEY GENERAL BILL SCHUETTE'S MOTION TO DISMISS**

Bill Schuette
Attorney General

Clifton Schneider
Assistant Attorney General
Attorney for Defendants
Corrections Division
P.O. Box 30217
(517) 335-7021
SchneiderC1@michigan.gov
P70582

Dated:  May 7, 2015

# CONCISE STATEMENT OF ISSUES PRESENTED

1.       The defendants are a state department and state officials acting in their official capacities.  The Eleventh Amendment provides immunity to the state and its officials acting officially.  Are the defendants entitled to Eleventh Amendment immunity on the official-capacity due-process claims?

2.       To defeat Eleventh Amendment immunity for an Americans with Disabilities Act (ADA) or Rehabilitation Act (RA) claim, the plaintiff must show an actual violation of the Fourteenth Amendment.  The plaintiff cannot do so because his conditions of confinement were not significant and atypical, and even if they were, he received the process to which he was due.  Are the defendants entitled to Eleventh Amendment immunity on the ADA and RA claims?

3.       The plaintiff requests injunctive and declaratory relief regarding a Department of Corrections policy and a state statute.  The policy and statute allow an HIV-positive prisoner to be placed in administrative segregation if the prisoner is found guilty of engaging in sexual conduct.  The plaintiff is no longer confined in prison.  Are the plaintiff's requests for declaratory and injunctive relief moot?

4.       A defendant is not liable in a civil suit absent some allegation of wrongdoing on the defendant's part.  The plaintiff has not made any factual allegations against Attorney General Schuette.  Is Attorney General Schuette entitled to dismissal from this suit?

5.       To show a violation of due process, the plaintiff must show that he faced significant and atypical restrictions on his conditions of confinement without receiving process.  The plaintiff admits that the conditions in administrative segregation were similar to those in level V and level IV general population.  In addition, the plaintiff received a hearing on the sexual-misconduct ticket that resulted in him being classified to administrative segregation.  No court has held the policy or statute at issue to be unconstitutional.  Are the defendants entitled to qualified immunity because they did not violate clearly established law?

6.       The defendants cannot be sued under the Americans with Disabilities Act and Rehabilitation Act in their personal capacities.  Should the personal-capacity claims be dismissed?

## INTRODUCTION

This case involves a prisoner who was placed in administrative segregation because he engaged in sexual misconduct while having an infectious disease. [Complaint, D/E #1, ¶¶ 23, 24, Page ID 9]. For purposes of this lawsuit, the plaintiff does not challenge that he engaged in a "consensual" sexual act in prison. *Id.* at ¶ 23, n. 1, Page ID 9. Because the plaintiff did not suffer a significant and atypical hardship and for the other technical grounds set forth in this brief, his claims must fail as a matter of law.

## STANDARD OF REVIEW

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). When "ruling on a defendant's motion to dismiss a complaint, '[a judge] must accept as true all of the factual allegations contained in the complaint.'" *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 572 (2007) (*quoting Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, n. 1 (2002)); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). To survive, the pleadings must state sufficient facts to show not just a possible, but a "plausible" claim of relief. *Bell Atlantic Corp.*, 550 U.S. at 562-565.

Eleventh Amendment immunity is a jurisdictional issue. *Cady v. Arenac County*, 574 F.3d 334, 344-45 (6th Cir. 2009). The defendants therefore raise this issue under Federal Rules of Civil Procedure 12(b)(1).

1

## STATEMENT OF FACTS

The plaintiff is infected with human immunodeficiency virus (HIV). He was confined in prison with the Michigan Department of Corrections, and he complains that after he violated a Department of Corrections rule by engaging in a sexual act with another prisoner, he was placed in administrative segregation. The plaintiff brings suit under the Americans with Disabilities Act (against all defendants), the Rehabilitation Act (against all defendants), and the Fourteenth Amendment's Due-Process Clause (against Defendants Pandya, Stieve, Finco, Heyns, and Schuette). Defendants Pandya, Finco, Stieve, and Heyns are sued in their individual and official capacities. [Complaint, D/E #1, ¶¶ 10-13, Page ID 5-6]. Defendant Schuette is sued in his official capacity only. *Id.* at ¶ 14, Page ID 6-7.

As to Attorney General Schuette, the plaintiff does not make any factual allegations; he alleges only the following: "In his official capacity, Schuette has broad responsibility for the enforcement of State laws, and he has a duty to defend State policies and laws including the Policy Directive and the Statute." *Id.*

Michigan Department of Corrections Policy Directive 03.04.120 (OO) presumes that "actual or attempted sexual penetration" is behavior that could transmit HIV. *Id.* at ¶ 39, Page ID 13. If a prisoner with HIV is found guilty of misconduct involving behavior that could transmit HIV, then the "CFA Deputy Director and the Chief Medical Officer . . . shall review the case to determine if the prisoner should be classified to administrative segregation." *Id.* (quoting Policy Directive 03.04.120 (PP)). The policy is based on the requirements of Michigan Compiled Laws 791.267(3).

On April 20, 2012, the plaintiff was accused of engaging in a sexual act with another prisoner. *Id.* at ¶ 23, Page ID 9. He alleges that on the same date, Defendants Pandya, Stieve, and Finco signed a memorandum classifying him to administrative segregation. *Id.* at ¶ 24, Page ID 9. On May 8, 2012, the plaintiff had a hearing and was found guilty of engaging in the sexual conduct with the other prisoner. *Id.* at ¶ 27, Page ID 10.

On May 10, 2012, the plaintiff had a hearing before the Security Reclassification Committee, "where his reclassification to administrative segregation was affirmed indefinitely because of his HIV-positive status." *Id.* at ¶ 28, Page ID 10. The plaintiff ultimately remained in administrative segregation for almost one year before being moved to level V general population; he then remained in level V general population for about 10 months before being moved to level IV general population. *Id.* at ¶¶ 32, 33, 36, Page ID 11, 12.

The plaintiff alleges that the conditions in administrative segregation were extremely restrictive. *Id.* at ¶¶ 29-31, Page ID 10-11. He alleges that the conditions in level V general population, when he was reclassified there, were also very similar, *id.* at ¶¶ 33-35, Page ID 11-12, and that the conditions in level IV general population were "only slightly relaxed as compared to Level V." *Id.* at ¶ 36, Page ID 12.

The plaintiff claims that his sexual act with the other prisoner presented "essentially no risk of HIV transmission." *Id.* at ¶ 44, Page ID 15. This is allegedly because he did not ejaculate, and he has an undetectable viral load. *Id.*

# ARGUMENT

## I. The defendants are entitled to Eleventh Amendment immunity in their official capacities as to the Fourteenth Amendment Due-Process claim.

The defendants in their official capacities are no more than an arm of the state, and they are entitled to Eleventh Amendment immunity. The plaintiff is seeking injunctive relief and monetary damages.

The Eleventh Amendment to the United States Constitution bars suits against states and their departments or agencies in federal court. In *Alabama v. Pugh,* 438 U.S. 781, 782 (1978), the Supreme Court stated as follows:

> There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit. *Edelman v. Jordan*, 415 U.S. 651 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459 (1945); *Worcester County Trust Co. v. Riley,* 302 U.S. 292 (1937).

Section 1983 does not abrogate Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). The Quern court stated, "we simply are unwilling to believe . . . that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States." *Id*.; *see also Berndt v. Tennessee,* 796 F.2d 879, 881 (6th Cir. 1986). This sovereign immunity also extends to any suit brought by a private party where the payment of liability must be made from public funds in the state treasury, regardless of the actual party being sued. *Edelman*, 415 U.S. at 663; *Hall v. Medical College of Ohio,* 742 F.2d 299, 301 (6th Cir. 1984), *cert. denied*, 469 U.S. 1113, 105 S. Ct. 796, 83 L. Ed. 2d 789 (1985). In *Missouri v. Fiske*,

290 U.S. 18, 27 (1933), the Supreme Court stated that the jurisdictional bar applies

regardless of the nature of the relief sought:

> Expressly applying to suits in equity as well as at law, the [Eleventh] Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State.

This was further explained in *Dugan v. Rank*, 372 U.S. 609, 620 (1963)

(quoting *Land v. Dollar*, 330 U.S. 731, 330 U.S. 738 (1947); *Larson v. Domestic &*

*Foreign Commerce Corp.,* 337 U.S. 682, 704 (1949); *Ex parte New York*, 256 U.S.

490, 256 U.S. 502 (1921)):

> The general rule is that a suit is against the sovereign if "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration," or if the effect of the judgment would be "to restrain the Government from acting, or to compel it to act."  (internal citations omitted).

In *Cory v. White,* 457 U.S. 85, 90-91 (1982), the Supreme Court again

declared that the Eleventh Amendment bars requests for injunctive relief:

> It would be a novel proposition indeed that the Eleventh Amendment does not bar a suit to enjoin the State itself simply because no money judgment is sought.  The Eleventh Amendment reads: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." Thus, the Eleventh Amendment by its terms clearly applies to a suit seeking an injunction, a remedy available only from equity.  To adopt the suggested rule, limiting the strictures of the Eleventh Amendment to a suit for a money judgment, would ignore the explicit language and contradict the very words of the Amendment itself.  *Edelman* did not embrace, much less imply, any such proposition.

The Eleventh Amendment also provides jurisdictional immunity to state

officials when the state is the real, substantial party in interest.  *Pennhurst State*

*School and Hospital v. Halderman*, 465 U.S. 89, 101 (1984).  As when the state itself is named as the defendant, a suit against state officials that is, in fact, a suit against a state is barred regardless of whether it seeks damages or injunctive relief. *Id.* at 101, 102.

A suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office, and is thus no different from a suit against the State itself.  *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

One exception to this general rule has been recognized where the suit challenges the constitutionality of a state official's action.  *Ex Parte Young,* 209 U.S. 123 (1908).  This exception has been limited, however, to prospective injunctive relief only.  *Edelman v. Jordan*, 415 U.S. 651 (1974).

The defendants are entitled to Eleventh Amendment immunity in their official capacities as to the due-process claim.  The defendants cannot be sued for monetary damages in their official capacities.  To the extent that the plaintiff seeks injunctive relief, the plaintiff lacks standing, as explained in argument III below.

**II.     Absent an actual due-process violation, the defendants are entitled to Eleventh Amendment immunity on the Americans with Disabilities and Rehabilitation Acts claims.**

The plaintiff brings claims under the Americans with Disabilities Act of 1990 (ADA) and the Rehabilitation Act.  42 U.S.C. § 12101, et seq.; 29 U.S.C. § 794.  In the Sixth Circuit, "claims under the Rehabilitation Act substantively mirror those brought under the Americans with Disabilities Act."  *Roetter v. Mich. Dep't of Corr.*,

456 Fed. Appx. 566, 569 (6th Cir. 2012) (unpublished) (citing *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996)); *see also Doe v. Salvation Army in the U.S.*, 531 F.3d 355, 357 (6th Cir. 2008) ("We review claims brought under the Rehabilitation Act as we would claims brought under the [ADA]."); *McPherson v. Mich. High Sch. Athletic Ass'n*, 119 F.3d 453, 459 (6th Cir. 1997) (*en banc*). "Pursuant to 29 U.S.C. § 794(d), the definitions under the American[s] with Disabilities Act of 1990, 42 U.S.C. § 12111, apply to the Rehabilitation Act." *Roetter*, 456 Fed. Appx. at 570.

Title II of the ADA covers discrimination in public services. 42 U.S.C. § 12131-12165. Title II applies to state correctional facilities, and prisoners can bring claims under Title II. *Pennsylvania Dept of Corrections v. Yeskey,* 524 U.S. 206 (1998).

Despite there being no personal-capacity liability under the ADA, the availability of money damages has been subject to debate. Prior to 2006, it appears that individuals sued in their official capacity *may* be liable for money damages and equitable relief under Title II *if* the claims sound in due process. *Carten v. Kent State University,* 282 F.3d 391, 395 (6th Cir. 2002) (discussing *Popovich v. Cuyahoga County Court of Common Pleas,* 276 F.3d 808 (6th Cir. 2002)).

However, in *Board of Trustees of the University of Alabama v. Garrett*, the United States Supreme Court held that the Eleventh Amendment barred suit against a state by a private individual for money damages under Title I of the ADA. *Bd of Trustees of the Univ of Ala v Garrett,* 531 U.S. 356, 374 (2001). In *Popovich v.*

*Cuyahoga County Court of Common Pleas* (*Popovich II*), decided post-*Garrett*, a fractured *en banc* panel held in line with *Garrett* that Title II of the ADA was an improper expansion of the Equal Protection Clause but that it appropriately enforces the Due Process Clause. *Popovich II,* 276 F.3d 808, 811. The *Popovich II* case concerned a hearing-impaired person who sought assistance in a child-custody hearing. *Id.* The *Popovich II* court found that the Supreme Court had previously "recognized the special nature of parental rights and has consequently imposed special due process guarantees so that states may not lightly terminate parents' relationships with their children." *Id.* at 813.

The Supreme Court again considered the ADA on January 10, 2006, in *United States v. Georgia*, where the Court held that a prisoner's claims for money damages grounded in equal protection could proceed if based on conduct that independently violates the Constitution. *Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) (quoting *United States v. Georgia*, 546 U.S. 151, 157 (2006)). The Supreme Court held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *United States v. Georgia*, 546 U.S. at 159.

A district-court case from the Eastern District of Michigan recently clarified the implications of *Georgia* for a person with a disability in an ADA case: "Because the disabled are not a suspect class for equal protection purposes, Plaintiff must identify a due process violation . . . ." *Babcock v. Mich.*, 2014 U.S. Dist. LEXIS

73639 at *7 (E.D. Mich. May 30, 2014) (citing *Popovich II,* 276 F.3d at 811).  Despite the possibility of money damages in some suits, punitive damages are not available under the ADA and RA.  *Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

After the plaintiff was caught engaging in a sexual act with another prisoner, he was segregated from the general prison population per policy to prevent him from transferring his HIV to other inmates.  The plaintiff claims that he qualifies as an individual with a disability due to his HIV status, and he claims that he was treated differently than his sexual partner (who does not have HIV) due solely to his HIV status.  The plaintiff's claim sounds in equal protection, but pursuant to *Babcock*, the plaintiff's disability does not afford him suspect-class status, and he must instead show a due-process violation.

Due-process concerns arise if the conditions that the plaintiff was subject to were significant and atypical compared to the ordinary incidents of prison life.  The plaintiff has admitted that the conditions in administrative segregation were not much different from level V and level IV general population, where he was housed when he was released from administrative segregation.  The conditions in administrative segregation were therefore not significantly atypical so as to give rise to due-process protections.  Even if they were, the plaintiff was given the process that he was due.

The plaintiff was found guilty of sexual misconduct.  So was his sexual partner.  The plaintiff's complaint is that he was treated differently than his sexual partner by being placed in administrative segregation.  But both prisoners received

hearings on the tickets, both prisoners were found guilty, and neither prisoner has had the misconduct charges overturned at a rehearing or in a state-court action. *See* M.C.L. § 791.255. The policy directive and statute being challenged call for administrative segregation if two conditions are met: (1) HIV infection and (2) guilty of sexual misconduct. A guilty finding involves process. And the plaintiff clearly received the process to which he was due – he had his hearing and was found guilty. The plaintiff is likely bound by that finding here in federal court. *Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013).

What the plaintiff's concern amounts to then, is that he was treated differently than his sexual partner based on his HIV status. The essence of the plaintiff's complaint is about equal protection, not due process. The plaintiff cannot show an actual violation of the Fourteenth Amendment to support his claim for monetary damages under the ADA and Rehabilitation Act. The defendants are entitled to Eleventh Amendment immunity, and the ADA and Rehabilitation Act claims should be dismissed. If any claim under the ADA or RA remains, the request for punitive damages should be dismissed as unavailable under those acts.

## III. The plaintiff's request for injunctive relief is moot because the plaintiff is out of prison and lacks standing to challenge the statute.

Article III of the United States Constitution limits federal court jurisdiction to a "case or controversy"; this provides the basis for principles of mootness. U.S. Const. art. III, § 2. "[I]f a case becomes moot, it does not satisfy the 'case or controversy' requirement of Article III, . . . and the federal courts are powerless to

decide it." *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986) (citing *SEC v. Medical Committee for Human Rights*, 404 U.S. 403, 407 (1972) and *United States v. City of Detroit*, 720 F.2d 443, 448 (6th Cir. 1983)).  As explained by the United States Court of Appeals for the Sixth Circuit, "[a] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Carras v. Williams,* 807 F.2d at 1289 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

A prisoner's transfer to a new prison generally moots that prisoner's claims for injunctive relief related to conditions at the first prison.  *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see also Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002); *Incumaa v. Ozmint*, 507 F.3d 281, 286-87 (4th Cir. 2007) (citing cases from Second, Third, and Eighth Circuits).  However, that rule might not apply where the complained-of restriction follows the prisoner after the transfer.  *Colvin v. Caruso*, 605 F.3d 282, 295-96 (6th Cir. 2010).

The Declaratory Judgment Act provides that in a case of actual controversy, a competent court may "declare the rights and other legal relations" of a party "whether or not further relief is or could be sought."  28 U.S.C. § 2201; *Public Service Comm. of Utah v. Wycoff*, 344 U.S. 237, 241 (1952).  "[T]he granting of a declaratory judgment rests in the 'sound discretion' of the court . . . ." *Grand Trunk Western R.R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)

The Sixth Circuit considers the following factors in determining whether a district court should issue a declaratory ruling: (1) whether the declaratory action

would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is a better or more effective alternative remedy. *Grand Trunk,* 746 F.2d at 326 (internal citation omitted).

The plaintiff seeks declaratory relief that Policy Directive 03.04.120 (NN)-(QQ) and M.C.L. § 791.267(3) violate the Americans with Disabilities Act, the Rehabilitation Act, and the Fourteenth Amendment's Due-Process clause; he also seeks to enjoin enforcement of that policy and that statute. [Complaint, D/E #1, Page ID 21]. But the plaintiff is no longer subject to the policy or statute because he was released to parole on October 18, 2014. [Complaint, D/E #1, ¶ 8, Page ID 5]. Accordingly, his requests for declaratory and injunctive relief are moot, and they should be dismissed.

In addition, the factors used in determining whether a court should issue a declaratory ruling counsel against such a ruling in this case. The plaintiff is out of prison, and his request for injunctive relief is moot. His request for declaratory relief will not settle the controversy here because it involves the same question being litigated in this case, whether the plaintiff's rights were infringed by the policy directive and statute at issue, and the ultimate decision on the merits will answer the question. The declaratory request will not serve a useful purpose

because it seeks to answer the same question as the merits claim, and the case would have to proceed in the same fashion on the proofs as to either. Finally, the better, more effective alternative remedy is to consider the case on the merits.

## IV. Attorney General Bill Schuette is entitled to dismissal because the plaintiff has not alleged any involvement on his part.

The United States Supreme Court recently clarified what a plaintiff must plead in order to survive a motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *see also Association of Cleveland Fire Fighters v. City of Cleveland, Ohio*, 502 F.3d 545, 548 (6th Cir. 2007). In *Bell Atlantic Corp.*, the Supreme Court stated that "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp.*, 550 U.S. at 555 (citations and quotation marks omitted). In addition, factual allegations must explicitly allege personal involvement. "Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

Conclusory, unsupported allegations of constitutional deprivation do not state a claim. *Ana Leon T v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir. 1987); *Chapman v. City of Detroit,* 808 F.2d 459, 465 (6th Cir. 1986). Liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon "a mere failure to act." *Shehee v. Lutrell*, 199 F.3d 295, 300 (6th Cir. 1999) (citing

*Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 119 S. Ct. 1763 (1999). Plaintiffs are required to plead that each government official violated his rights through their own actions.

In *Ashcroft v. Iqbal*, the Supreme Court was faced with a complaint containing conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662. The respondent there had alleged accounts of his prison ordeal that could, "if proved, demonstrate unconstitutional misconduct by some governmental actors," but the petitioners were not those actors. *Id.* at 667. The Court found that the complaint failed to state a claim upon which relief could be granted. *Id.* at 687.

The Supreme Court also held that legal conclusions disguised as factual allegations are not sufficient to withstand a motion to dismiss. *Id.* at 678-79. Federal Rule of Civil Procedure 8's relaxed pleading standard "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.*

The plaintiff here fails to allege any factual allegations against Schuette and fails to explain how Schuette was involved in any aspect of his treatment while in prison. The sole legal claim against Schuette is for violation of the Fourteenth Amendment Due Process Clause. The plaintiff does not allege, however, that Schuette deprived him of any process to which he was due. Accordingly, Schuette is entitled to dismissal from this case under Federal Rules of Civil Procedure 12(b)(6).

**V.    The plaintiff has not alleged a significant and atypical hardship sufficient to support a due-process claim, and the defendants are entitled to qualified immunity.**

The plaintiff's one-year stay in administrative segregation did not involve a protected liberty interest. But even if it did, the plaintiff received all of the process that he was due. The defendants are therefore entitled to qualified immunity.

Officials or employees of the Michigan Department of Corrections who are sued in their individual capacities "are shielded from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996). Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The burden of proof is on the plaintiff to show that the defendants are *not* entitled to qualified immunity. *Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

The Sixth Circuit applies a three-part test to determine whether a government official is entitled to the defense of qualified immunity: (1) whether a constitutional violation has occurred; (2) whether the right that was violated was a clearly established right of which a reasonable person would have known; and (3) whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Higgason v. Stephens*, 288 F.3d 868, 876-77 (6th

Cir. 2002); *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999). While the defendants bear the initial burden of presenting facts that, if true, would entitle them to immunity, the ultimate burden of proof falls on the plaintiff to show that the defendants violated a right so clearly established that any official in defendants' positions would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Noble*, 87 F.3d at 161.

In *Pearson v. Callahan*, the Supreme Court held that courts do not have to adhere to the rigid two-step analysis set forth in *Saucier v. Katz. Pearson v. Callahan,* 555 U.S. 223 (2009). Instead, courts have the discretion to decide whether, under the facts of the case before them, there is a violation of a constitutional right, or to first go to the second prong and decide whether the defendant's actions violated clearly established law. *Pearson,* 555 U.S. at 235-36.

Defendants are entitled to qualified immunity unless a plaintiff's "'rights were so clearly established when the acts were committed that any officer in the defendant's position, measured objectively, would have clearly understood that he was under an affirmative duty to have refrained from such conduct.'" *Ramirez v. Webb*, 835 F.2d 1153, 1156 (6th Cir. 1987). Moreover, if officials "'of reasonable competence could disagree' on whether the conduct violated the plaintiff's rights," then the defendants are entitled to qualified immunity. *Caldwell v. Woodford County Chief Jailor*, 968 F.2d 595, 599 (6th Cir. 1992) (internal citation omitted).

In order to find that a clearly established right exists, "'the district court must find binding precedent by the Supreme Court, [the Sixth Circuit], the highest

court in the state in which the action arose, or itself, so holding.'" *Wayne v. Village of Sebring*, 36 F.3d 517, 531 (6th Cir. 1994) (internal citation omitted). "The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.'" *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (internal citation omitted).

Furthermore, the right cannot be stated in too general of terms. In other words, it is not enough that the right to be provided with due process be clearly established. "'[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense . . . .'" *Saucier*, 533 U.S. at 202. The Sixth Circuit has long followed the rule set forth in *Saucier*:

> When determining the objective legal reasonableness portion of the qualified immunity standard, individual claims of immunity must be analyzed on a fact-specific, case-by-case basis to determine whether the plaintiff's constitutional rights were so clearly established when the alleged misconduct was committed that any official in the defendant's position would understand that what he did violated those rights.

*O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999 (6th Cir. 1994).

The qualified-immunity inquiry must focus on the "objective reasonableness" of the official's conduct. *Harlow*, 457 U.S. at 818. "Objective reasonableness" has sometimes been characterized as a third prong to the qualified-immunity analysis. *See, e.g.*, *Flint v. Kentucky Department of Corrections*, 270 F.3d 340, 350 (6th Cir. 2001). When analyzing "objective reasonableness," a court "must 'determine whether the plaintiff has alleged sufficient facts, and supported the allegations with

sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights.'" *Flint*, 270 F.3d at 355 (internal citation omitted).

The qualified-immunity analysis must be undertaken in regard to the specific constitutional violation at issue. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999) (citing *Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990)). The standard for determining whether a period of confinement in segregation violates due process is whether the confinement rises to the level of an atypical and significant hardship in relation to the ordinary incidents of prison life. *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997).

Since *Sandin*, there have been many cases finding no due-process violation where prisoners have spent long periods of time in segregation. *Edwards v. Worth*, 2015 U.S. Dist. LEXIS 53067 at *9-10 (M.D. Tn. 2015) (less than four months in segregation, and the plaintiff was prevented from earning good-time credits) (collecting cases: "*Bradley v. Evans*, 229 F.3d 1150, [published in full-text format at 2000 U.S. App. LEXIS 22403] 2000 WL 1277229, at *5-7 (6th Cir. Aug. 23, 2000) (holding that 14 months in administrative segregation was not atypical and significant hardship)"; *Randolph v. Campbell*, 25 F. Appx. 261, 263 (6th Cir. 2001) ("The fact that the administrative segregation placement may have a negative implication on Randolph's opportunity to earn sentence reduction credits . . . is a collateral consequence of Randolph's placement in administrative segregation that is insufficient to create a liberty interest."); *Hansard v. Barrett*, 980 F.2d 1059, 1062

(6th Cir. 1992) (no constitutional right to earn sentence credits); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (affirming dismissal of claim based on increased security classification); *Graves v. Hodge*, No. 06-2004-M1/V, 2006 U.S. Dist. LEXIS 11207, 2006 WL 485115, at *5 (W.D. Tenn. Feb. 28, 2006) ("restrictions imposed [including one-year package restriction] do not constitute a significant or atypical hardship"); *Ferguson v. Walker*, No. 2:04-CV-397, 2005 U.S. Dist. LEXIS 36077, 2005 WL 1036677, at *2 (E.D. Tenn. May 4, 2005) (punitive segregation, twelve-month package restriction, increased security level and loss of opportunity to earn sentence credits do not state a due process claim under § 1983)).

Other cases have held that punitive segregation stays of 180 days, 191 days, 270 days, 11 months, and 18 months did not violate due process. Columbia Human Rights Law Review, A Jailhouse Lawyer's Manual, 624 (6th Ed. 2005) (citing *Tulloch v. Coughlin*, 1995 WL 780970 (W.D.N.Y. 1995) (180 days); *Jones v. Kelly*, 937 F. Supp. 200 (W.D.N.Y. 1996) (191 days); *Carter v. Carriero*, 905 F. Supp. 99 (W.D.N.Y. 1995) (270 days); *Frazier v. Coughlin*, 81 F.3d 313 (2d Cir. 1996) (11 months); *Vasquez v. Coughlin*, 2 F. Supp. 2d 255 (N.D.N.Y. 1998) (18 months)). See also *Collmar v. Wilkinson*, 187 F.3d 635 (6th Cir. 1999) (30 days in security control, 14 days in disciplinary control, and six to eight months in administrative control did not constitute an atypical and significant hardship); *Merchant v. Hawk-Sawyer*, 37 Fed. Appx. 143 (6th Cir. 2002) (unpublished) (21 months in special housing unit was not significant and atypical).

Courts have also looked to the conditions in segregation to determine whether the conditions are significantly more restrictive than those found in the general prison population. *Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2005). In *Lekas*, loss of telephone privileges, employment, educational programming, visits by clergy, access to church, visits by family, exercise privileges, personal possessions, and access to the commissary were not significantly atypical as compared to the general prison population. *Id.* at 605, 610, 615.

In *Wilson v. Zader*, 2005 U.S. Dist. LEXIS 28327 at *2 (E.D. Mich. 2005), an HIV-infected prisoner was found guilty of sexual misconduct in 1997. He was released in 2000 but then re-incarcerated in 2005; upon coming back to prison, he was placed back in administrative segregation based on the 1997 ticket. *Id.* The court reviewed cases involving administrative segregation (as opposed to punitive segregation), and determined that four years in administrative segregation did not constitute an atypical and significant hardship. *Id.* at *3-4 ("The Sixth Circuit Court of Appeals has held that placement in administrative segregation for 13 ½ years does not constitute an atypical and significant hardship on the inmate. *Underwood v. Luoma*, 107 Fed. Appx. 543, 545 (6th Cir. 2004). *See also Williams v. Vidor*, 67 Fed. Appx. 857 (6th Cir. 2003) (holding that placement in administrative segregation for ten years was not an atypical and significant hardship); *McMann v. Gundy*, 39 Fed. Appx. 208 (6th Cir. 2002) (five years not an atypical and significant hardship)"). The court also held that parole consequences are merely collateral consequences that do not implicate a liberty interest. *Id.* at *4.

In our case, the plaintiff spent less than one year in administrative segregation. There are several cases finding longer stays in segregation to not violate due process, especially where <u>administrative</u> segregation is involved. The length of stay alone is therefore insufficient to state a claim.

As to the conditions in segregation, the plaintiff admits in his complaint that the conditions in administrative segregation were not that different from the conditions he faced in level IV and level V general population. Those administrative-segregation conditions were therefore not significantly atypical as compared to the general prison population. And many of the conditions complained of by the plaintiff, such as loss of visits and programming, are identical to the conditions that the Seventh Circuit determined in *Lekas* did not violate due process.

Under the clearly established law cited above, the plaintiff's stay in administrative segregation was not significant and atypical such as to rise to a level to implicate due-process. The defendants are therefore entitled to qualified immunity.

Even if the conditions alleged by the plaintiff were significant and atypical, the plaintiff admits that he received a hearing on his sexual misconduct ticket. The policy directive and statute being challenged call for administrative segregation if two conditions are met: (1) HIV infection and (2) guilty of sexual misconduct. A guilty finding involves process. M.C.L. § 791.252; *see also Peterson v. Johnson*, 714 F.3d 905 (6th Cir. 2013).

The plaintiff clearly received the process to which he was due – he had his hearing and was found guilty. While the plaintiff was temporarily held in segregation pending the hearing, his re-classification to administrative segregation by the Classification Committee did not occur until two days after his hearing on the ticket. Whatever process was due to the plaintiff, he received it. Although the plaintiff refers to his hearing as "perfunctory," such a statement is a bare conclusory allegation with no factual allegations to support it. [Complaint, D/E #1, ¶ 27, page 10]. And the plaintiff does not allege that any of the defendants were the arbiter on the ticket or were otherwise involved in causing the hearing to be "perfunctory."

The plaintiff's stay in administrative segregation was not one that gave rise to a protected liberty interest, but he did receive all of the process that he was due. In addition, Policy Directive 03.04.120 (NN)-(QQ) and M.C.L. § 791.267(3) have never been held by any court to violate the Constitution. The defendants are entitled to qualified immunity because they did not violate any clearly established right of which a reasonable person would have known.

## VI. The defendants are not subject to suit under the Americans with Disabilities Act and Rehabilitation Act in their individual capacities.

The ADA does not impose liability upon individuals. *Lee v. Mich. Parole Bd.*, 104 Fed. Appx. 490, 493 (6th Cir. 2004); *Green v. City of New York*, 465 F.3d 65, 76 (2d Cir. 2006). Title II of the ADA does not allow suits against public employees in their individual capacities. *Williams v. McLemore*, 247 Fed. Appx. 1, 8 (6th Cir. 2007).

The plaintiff concurs is dismissal of the ADA and RA claims against the defendants in their personal capacities, so those claims should be dismissed.

## CONCLUSION AND RELIEF REQUESTED

Defendants Michigan Department of Corrections, Haresh Pandya, Thomas Finco, Daniel Heyns, and Attorney General Bill Schuette respectfully request that the Court grant their motion and dismiss this action.

Respectfully submitted,

Bill Schuette
Attorney General

*/s/ Clifton Schneider*
Assistant Attorney General
Attorney for Defendants
Corrections Division
P.O. Box 30217
(517) 335-7021
SchneiderC1@michigan.gov
P70582

Dated: May 7, 2015

## CERTIFICATE OF SERVICE

I hereby certify that on May 7, 2015, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing as well as via US Mail to all non-ECF participants.

*/s/ Clifton Schneider*
Assistant Attorney General
Attorney for Defendants
Corrections Division
P.O. Box 30217
(517) 335-7021
SchneiderC1@michigan.gov
P70582