UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

JOHN DORN,

    Plaintiff,

v.

MICHIGAN DEPARTMENT OF
CORRECTIONS, et al.,

    Defendants.

NO. 1:15-cv-359

HON. PAUL L. MALONEY

Chris Emerson Davis (P52159)
Michigan Protection & Advocacy Service
4095 Legacy Pkwy., Ste. 500
Lansing, MI 48911
(517) 487-1755

Kyle Anthony Palazzolo
Scott A. Schoettes
Lambda Legal Defense Fund, Inc.
105 W Adams St., Ste. 2600
Chicago, IL 60603
(312) 663-4413

Clifton B. Schneider (P70582)
Attorney for MDOC, Pandya, Finco,
Heyns, Stieve, and Schuette
Michigan Dep't of Attorney General
Civil Litigation, Employment
 & Elections Division
P.O. Box 30736
Lansing, MI 48909
(517) 335-7021

## DEFENDANTS' REPLY TO PLAINTIFF'S
## RESPONSE TO MOTION TO DISMISS

**I.    The requests for injunctive and declaratory relief are moot.**

Dorn argues that he avoids mootness and standing defects because he faces "concrete and continuing injury" in the form of continuing emotional distress and a notation in his prison record. [Plaintiff's Response, D/E #22, Page ID 162-63]. But once a prisoner is released, a request for expungement of disciplinary records is moot. *Maclean v. Scibana*, 1999 U.S. Dist. LEXIS 8647, *3 (E.D. Mich. 1999) (J.

1

Tarnow); *Watts v. Stephens*, 2014 U.S. Dist. LEXIS 34024, *3-4 (W.D. Tenn. 2014). In *O'Shea v. Littleton*, 414 U.S. 488, 495-497 (1974), holding that a plaintiff has standing if there are some "continuing, present adverse effects," the United States Supreme Court rejected a claim based on a fear of future prosecution because it involved "speculation and conjecture."

In *Spencer v. Kemna*, 523 U.S. 1, 7-8 (1998), the Supreme Court denied a claim where the plaintiff's parole was wrongfully terminated. Since the reincarceration was over, the Court concluded that there was no specific and concrete continuing collateral consequence. *Id*. at 9, 13-14. Collateral consequences are not presumed with a mere parole revocation. *Id*. at 8-13. The plaintiff argued four concrete injuries. First, he argued that his parole revocation could be used to his detriment in a future parole proceeding. *Id*. at 14. In rejecting this argument, the Court stated that the plaintiff was back in prison on another conviction, and it was "still a possibility rather than a certainty" that his revocation would be used against him because it was just one factor that would be considered in a future parole decision. *Id*. Second, the Court rejected the argument that the revocation could be used in a future sentencing because it was contingent upon a future violation of law. *Id*. at 15. Finally, the plaintiff's third and fourth contentions that the revocation could be used against him as impeachment evidence or as evidence under Fed. R. Evid. 405 were also rejected as speculative. *Id*. at 15-16.

Dorn also cites several cases for the proposition that "expungement of prison disciplinary records provides a valid basis for declaratory and injunctive relief."

2

[Plaintiff's Response, D/E #22, Page ID 163-64]. Those cases, however, are easily distinguished. In *Wolfel v. Morris*, 972 F.2d 712, 714 (6th Cir. 1992), the plaintiffs were inmates, not ex-inmates. Also, that case discussed the Eleventh Amendment, not mootness. *Id.* at 719. Likewise, in *Walker v. United States*, 116 F.R.D. 149, 150 (S.D.N.Y. 1987), mootness and standing were not at issue. *Hatcher v. Shettle*, 1990 U.S. Dist. LEXIS 19470, *1 (N.D. Ind. 1990), also involved a prisoner, not an ex-prisoner.

*Lira v. Cate*, 2009 U.S. Dist. LEXIS 91292, *51 (N.D. Cal. 2009), is an out-of-circuit decision with facts that are not analogous to Dorn's. In *Lira*, the plaintiff was designated as a gang member and wanted the designation removed after his parole. *Id.* The plaintiff argued that removal of the designation would "mitigate the danger of retaliatory gang violence, and . . . have a favorable impact on his mental health." *Id.* at *68. The plaintiff had been the victim of a gang-directed assault, and the court heard "testimony about the communication network between prison gangs and street gangs, and thus the fact that plaintiff [was] not currently incarcerated [did] not mean that he [was] not in danger." *Id.* at *70. The case was not moot because the danger of the designation and the "continued adverse impact on plaintiff's mental health" were collateral consequences of the designation. *Id.*

Finally, in *Gall v. Scroggy*, 603 F.3d 346, 351-352 (6th Cir. 2010), after the plaintiff had been ordered released in a *habeas corpus* action, the state did not expunge the plaintiff's conviction. The Sixth Circuit held that a federal court has jurisdiction to enforce its judgments, including expungement of the record. *Id.* The

3

plaintiff was still incarcerated (in another state), and the defendant admitted that the conviction would affect his future parole decision. *Id.* at 354.

Most of the cases Dorn relies on involved prisoners, not ex-prisoners. The defendants' mootness argument is based on Dorn's ex-prisoner status, which removes the live-case-or-controversy requirement here. And the *Spencer* case highlights that mere possibilities of future ill effects are insufficient.

Unlike here, the *Lira* case involved a concrete continuing effect because the plaintiff was subject to gang reprisals outside of prison. Although *Lira* also discussed emotional distress, it is unlikely that such an injury on its own could ever satisfy the standing requirement – every ex-prisoner with an undesirable notation in their prison file can claim ongoing emotional distress. But a prison file in storage does not actually cause a current concrete injury.

Dorn lacks standing to challenge the complained-of statute and policy because he is no longer incarcerated. And his request for expungement of his prison file is moot because he is no longer incarcerated. These are jurisdictional arguments that apply regardless of the act under which Dorn claims relief. [*See* Plaintiff's Response, D/E #22, Page ID 165].

## II. The defendants are entitled to qualified immunity on the due-process claims.

Dorn alleges violation of his due-process rights both from the placement in administrative segregation and the increase in his security classification when he was released. The defendants are entitled to qualified immunity as to both.

4

"'[A]n increase in security classification, such as being classified as an STG member, does not constitute an 'atypical and significant' hardship in relation to the ordinary incidents of prison life because a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005). Dorn's reliance on *Harden-Bey v. Rutter*, 524 F.3d 789 (6th Cir. 2008), is misplaced in this regard. *Harden-Bey* briefly discussed *Harbin-Bey* and found that it did not speak to the question at issue in *Harden-Bey*: "whether the placement may last into perpetuity without becoming 'atypical and significant.'" *Harden-Bey*, 524 F.3d at 795. *Harbin-Bey* remains good law, and the defendants are entitled to qualified immunity insofar as Dorn alleges that his classification to level 5, then to level 4, violated his due-process rights.

In *Harden-Bey*, the plaintiff challenged his placement and *continued confinement* in administrative segregation. *Harden-Bey*, 524 F.3d at 791. The question before the Sixth Circuit was "whether Harden-Bey's allegedly indefinite confinement in administrative segregation, three years and running as of the time of the complaint, amount[ed] to an 'atypical and significant hardship on [him] in relation to the ordinary incidents of prison life.'" *Id.* at 792 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Since the plaintiff alleged an indefinite confinement with no hearings, the Sixth Circuit remanded the due-process claim to the district court to assess "whether the nature and allegedly 'indefinite' duration" made the conditions atypical and significant. *Id.* at 795.

5

In our case, Dorn did not face "indefinite" segregation, as he was in administrative segregation for less than one year. He is out now, unlike in *Harden-Bey*, and he also does not allege, as Harden-Bey did, that "prison officials refuse[d] to give him a hearing to explain his continued detention." *Id.* at 793.

Dorn's reliance on out-of-circuit law also does not save his case. In *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009) (internal quotations and citation omitted), the Seventh Circuit acknowledged that it has held that in short-duration cases (less than one year), "inmates have no liberty interest in avoiding transfer to discretionary segregation--that is, segregation imposed for administrative, protective, or investigative purposes." But in other cases, it had remanded for factual development even in some cases involving durations as short as six months. *Id.* at 698. The court remanded the case to the district court to "determine whether the actual conditions of [the plaintiff's] lengthy segregation [were] harsher than the conditions found in the *most restrictive prison* in Wisconsin." *Id.* at 699 (emphasis added). In the instant case, no factual development is needed because Dorn has admitted that administrative-segregation conditions were similar to levels 4 and 5.

In *Mitchell v. Horn*, 318 F.3d 523, 532-33 (3d Cir. 2003), the Third Circuit remanded a case for factual development even though the plaintiff had not stated a claim. Because the plaintiff had prepared the case *pro se*, he might have mistakenly left out pertinent information about his case. *Id.* That is an incorrect

6

standard to apply (*see Ashcroft v. Iqbal*, 556 U.S. 662 (2009)), but the reasoning also does not apply here because Dorn is represented by attorneys.

Dorn compares the conditions in administrative segregation to his prior level-1 placement. [Plaintiff's Response, D/E #22, Page ID 167]. Dorn does not cite any caselaw holding that the "significant and atypical" test must be applied with regard to level 1. The Seventh Circuit appeared to use a most-restrictive-prison-in-the-state test in *Marion*. There is no clearly established law mandating that the comparison be to a level-1 prison in our case, as opposed to level 5 or level 4. Since Dorn has admitted that segregation was similar to levels 4 and 5, segregation was not significant and atypical. In the absence of clearly established law to the contrary, the defendants are entitled to qualified immunity.

### III. Dorn's ADA and RA claims fail.

If Dorn's due-process claim fails, so too do his ADA and RA claims, as Dorn cannot show an actual violation of the 14th Amendment. Further, the defendants did not otherwise violate the ADA and RA.

Dorn relies on *Bragdon v. Abbott*, 524 U.S. 624 (1998), to argue that he was entitled to an individualized assessment. [Plaintiff's Response, D/E #22, Page ID 175]. But the individualized determination discussed in *Bragdon* relates to the determination of whether a person has a disability. *Id.* at 657 (dissent). As to the ADA's direct-threat exception, the Supreme Court held, "The existence, or nonexistence, of a significant risk must be determined from the standpoint of the

7

person who refuses the treatment or accommodation, and the risk assessment must be based on medical or other objective evidence." *Id.* at 649.

Our case does not involve the refusal of treatment, but the protection of the prison population. The State of Michigan did not determine that <u>all</u> HIV-infected prisoners would be segregated. Rather, only those prisoners engaging in high-risk behavior such as intravenous-needle use and sexual activity involving penetration.[1] Dorn was one of those prisoners. He was placed in administrative segregation not because of his HIV but because of his behavior that endangered the health of another prisoner. Dorn therefore received individualized attention.

Dorn argues that he posed little risk of transmitting HIV because on this occasion where he was caught, he was engaging only in "oral sex without ejaculation." [Amended Complaint, D/E #15, ¶ 45, Page ID 89]. But the MDOC is not in the business of determining what types of sex Dorn was engaging in or whether he ejaculated on this particular occasion. Dorn violated prison rules when he engaged in sexual conduct involving penetration, showing that he could not be trusted to follow the prison rules against sex. The MDOC cannot simply ignore the risk of virus transmission, subjecting Dorn's victims to painful anti-retroviral therapies. Between Dorn and his cellmate, only Dorn was committing a felony by violating Mich. Comp. Laws § 333.5210.

---

[1] The federal government states that an undetectable viral load in blood does not mean that the virus cannot be transmitted through sexual fluids. http://www.hiv.va.gov/patient/faqs/transmission-of-undetectable-virus.asp (last visited July 22, 2015). The Center for Disease Control reports that HIV can be passed to a person performing felatio. http://www.cdc.gov/hiv/riskbehaviors/oralsex.html (last visited July 22, 2015).

8

## IV. Attorney General Bill Schuette is entitled to dismissal from this action.

Dorn admits that he is not suing Attorney General Schuette based on any action that Schuette took, "but rather because Schuette is a necessary party for prospective relief with respect to the enforcement of the statute." [Plaintiff's Response, D/E #22, Page ID 177]. Dorn is incorrect in this assertion, and he also has no standing to challenge the statute.

Dorn asserts that Schuette "has broad responsibility for the enforcement of State law [and] a duty to defend State policies and laws." *Id.* at Page ID 178. In *Ex parte Young*, 209 U.S. 123, 155-156 (1908), the Supreme Court held that "individuals, who, as officers of the State, are clothed with some duty in regard to the enforcement of the laws of the State, and who threaten and are about to commence proceedings, either of a civil or criminal nature," are appropriate parties in a suit to enjoin enforcement of a statute.

"*Young* abrogates a state official's Eleventh Amendment immunity when a suit challenges the constitutionality of a state official's *action*." *Children's Healthcare is a Legal Duty v. Deters*, 92 F.3d 1412, 1415 (6th Cir. 1996) (emphasis in original) (citations omitted). "*Young* does not apply when a defendant state official has neither enforced nor threatened to enforce the allegedly unconstitutional state statute." *Id.* at 1415 (citations omitted). There is a "requirement that the official threaten and be about to commence proceedings." *Id.* at 1416 (citing *Ex parte Young*, 209 U.S. at 155-56). "General authority to enforce the laws of the state is not sufficient to make government officials the proper parties to litigation

challenging the law." *Id.* at 1416 (*quoting 1st Westco Corp. v. School Dist. of Philadelphia*, 6 F.3d 108, 113 (3d Cir. 1993)).

In *Russell v. Lundergan-Grimes*, 784 F.3d 1037 (6th Cir. 2015), the State Board of Elections promulgated a regulation that was challenged. *Id.* at 1048. The Board was "actively involved with administering the statute." *Id.* The Secretary of State trained staff on how to implement the regulation. *Id.* And the Board "routinely partnered with the Attorney General in responding to complaints of improper election activity." *Id.* The regulation had been enforced against the plaintiff in a prior election cycle, and he sought to enjoin the statute for fear of prosecution in the current election cycle. *Id.* at 1043.

The plaintiff did not need to show a specific enforcement action against him, and his showing of a "significant possibility" of enforcement was enough. *Id.* *Russell* involved a pre-enforcement situation, so the plaintiff was required to "'show that he [was] under threat of suffering [an] "injury in fact."'" *Id.* at 1049 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted)).

Dorn is not under any threat from the statute or policy because he is no longer incarcerated. Three MDOC employees (Stieve, Pandya, Finco) were the persons who re-classified him to administrative segregation, not Attorney General Schuette.

Dorn alleges only that Attorney General Schuette had "broad responsibility" to enforce the laws of the state. The Sixth Circuit, in *Deters*, explicitly held that an allegation of such "general authority" is not enough.

## CONCLUSION AND RELIEF REQUESTED

Defendants Michigan Department of Corrections, Haresh Pandya, Thomas Finco, Daniel Heyns, Jeffrey Stieve, and Attorney General Bill Schuette respectfully request that the Court grant their motions to dismiss and dismiss this action.

Respectfully submitted,

Bill Schuette
Attorney General

*/s/ Clifton Schneider*
Assistant Attorney General
Attorney for Defendants
Civil Litigation, Employment &
Elections Division
P.O. Box 30736
(517) 335-7021
SchneiderC1@michigan.gov
Dated: July 22, 2015                              P70582

## CERTIFICATE OF SERVICE

I hereby certify that on July 22, 2015, I electronically filed the foregoing *Defendants' Reply to Plaintiff's Response to Motion to Dismiss* with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*/s/ Clifton Schneider*
Assistant Attorney General
Attorney for Defendants
Civil Litigation, Employment &
Elections Division
P.O. Box 30736
(517) 335-7021
SchneiderC1@michigan.gov
P70582